**GUCOVSCHI LAW FIRM, PLLC.**
Adrian Gucovschi (State Bar No. 360988)
Nathaniel Haim Sari (State Bar No. 362634)
165 Broadway, 23rd Floor
New York, NY 10006
Telephone: (212) 884-4230
Facsimile: (212) 884-4230
E-Mail: adrian@gucovschilaw.com
nathaniel@gucovschilaw.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joshua B. Glatt (State Bar No. 354064)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com
jglatt@bursor.com

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHRISTINA PETRUCCI, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GENERAL MILLS, INC.,<br><br>Defendant. | **Case No.**<br><br>**CLASS ACTION COMPLAINT**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Christina Petrucci ("Plaintiff") brings this action on behalf of herself and all others similarly situated against General Mills, Inc. ("Defendant"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to herself, which are based on personal knowledge.

## NATURE OF THE ACTION

1. Plaintiff brings this class action on behalf of herself and all similarly situated consumers who purchased Fiber One 70 Calorie Chocolate Fudge Brownies, Fiber One 70 Calorie Chocolate Chip Cookie Bars, or Fiber One 70 Calorie Cinnamon Coffee Cake Soft Baked Bars containing allulose and marketed as containing "2g SUGAR" (collectively, the "Products").[1]

2. Defendant markets and advertises the Products on their front labels as containing "2g SUGAR" (the "Sugar Representations"). However, unbeknownst to consumers, the Products contain an additional 2 grams of sugar per labeled serving in the form of allulose. Allulose is a monosaccharide and, therefore, a sugar under the applicable federal labeling standards.

3. Each Product contains 2 grams of allulose in addition to 2 grams of other sugars per labeled serving, for a total of 4 grams of sugar—twice the represented amount. Defendant's Sugar Representations are therefore false, misleading, and impermissible.

4. Accordingly, Plaintiff brings claims against Defendant for violations of: (1) California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq.; (2) California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 et seq.; (3) the consumer-protection statutes identified herein; and (4) unjust enrichment.

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A) because the proposed Classes include more than 100 members, the aggregate claims of the proposed Classes exceed $5,000,000, exclusive of interest and costs, and at least one member of the proposed Classes is a citizen of a state different from Defendant.

---

[1] The Products are the allulose-containing versions of: (1) Fiber One 70 Calorie Chocolate Fudge Brownies; (2) Fiber One 70 Calorie Chocolate Chip Cookie Bars; and (3) Fiber One 70 Calorie Cinnamon Coffee Cake Soft Baked Bars. Versions that do not contain allulose or do not bear the Sugar Representations are excluded.

6. This Court has specific personal jurisdiction over Defendant because Defendant purposefully directs the marketing, distribution, and sale of the Products to consumers in California, including this District. Defendant placed the Products bearing the challenged Sugar Representations into the California market, and Plaintiff's claims arise out of and relate to her purchase of one of those Products in this District.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims took place in this District. Plaintiff resides in Petaluma, California, and purchased the Chocolate Fudge Brownies at a Safeway store there. Petaluma is in Sonoma County, making assignment to the San Francisco or Oakland Division proper under Civil Local Rule 3-2(c)–(d).

## PARTIES

8. Plaintiff Christina Petrucci is a citizen of California residing in Petaluma, California. While residing there, Plaintiff purchased Fiber One 70 Calorie Chocolate Fudge Brownies (the "Chocolate Fudge Product") for her personal use at a Safeway store in Petaluma, California, in or around October 8, 2026, for approximately $7.99. Before making her purchase, Plaintiff saw and relied on the Chocolate Fudge Product's prominent "2g SUGAR" representation. Based on that representation, Plaintiff reasonably believed that the Chocolate Fudge Product contained 2 grams of sugar per brownie. The representation was part of the basis of Plaintiff's bargain, and she would not have purchased the Chocolate Fudge Product on the same terms had she known it was untrue. Plaintiff also paid a price premium because of Defendant's false and misleading "2g SUGAR" representation but did not receive the benefit of her bargain because each brownie contains 2 grams of allulose in addition to 2 grams of other sugars, for a total of 4 grams of sugar. Had Plaintiff known the truth, she would not have purchased the Chocolate Fudge Product or would have paid substantially less for it.

9. Plaintiff remains interested in purchasing brownies that truly contain the represented amount of sugar. However, she cannot know for certain whether Defendant's false labeling has been or will be corrected, and the Chocolate Fudge Product's composition may change over time. If Defendant continues to make the "2g SUGAR" representation, Plaintiff will be unable to make

informed purchasing decisions and is likely to be misled again unless Defendant is required to ensure that the Chocolate Fudge Product's labeling is accurate. Plaintiff is an average consumer who is not sophisticated in the chemistry, manufacturing, or formulation of food products. Neither Plaintiff nor reasonable consumers have the specialized knowledge needed to determine independently whether allulose is a sugar.

10. Defendant General Mills, Inc. is a corporation organized under the laws of Delaware with its principal place of business and headquarters at Number One General Mills Boulevard, Minneapolis, Minnesota 55426. Fiber One is one of Defendant's brands. Defendant formulates, labels, markets, distributes, and/or sells the Products throughout California and the United States, including this District. The Chocolate Chip Cookie Bars label identifies General Mills Sales, Inc., Defendant's subsidiary, as the distributor. Defendant controls and participates in the formulation, labeling, and marketing of the Products and the challenged Sugar Representations.

## FACTUAL ALLEGATIONS

### A. Consumers Seek Out and Pay More for Products With Less Sugar

11. Consumer demand for products with less sugar is well documented. A 2022 nationwide survey found that 73% of Americans ages 18 to 80 reported trying to limit or avoid sugars.[2]

12. That demand accords with widespread public-health guidance. The 2025–2030 Dietary Guidelines for Americans state that no amount of added sugars is recommended or considered part of a healthy or nutritious diet and that one meal should contain no more than 10 grams of added sugars.[3] The World Health Organization recommends limiting free sugars to less than 10 percent of total daily energy intake and states that limiting them further to 5 percent or less

---

[2] International Food Information Council, 2022 Food & Health Survey 57 (May 18, 2022), https://ific.org/wp-content/uploads/2022/06/IFIC-2022-Food-and-Health-Survey-Report-May-2022.pdf.

[3] U.S. Department of Health and Human Services & U.S. Department of Agriculture, Dietary Guidelines for Americans, 2025–2030, at 5 (Jan. 2026), https://cdn.realfood.gov/DGA.pdf

may provide additional health benefits.[4] The American Heart Association recommends limiting added sugars to no more than 6 percent of daily calories.[5] This guidance reinforces consumers' attention to quantitative representations about how much sugar products contain.

13. Food and beverage manufacturers are aware of this demand and of the premium consumers will pay to satisfy it. Products marketed as containing small quantities of sugar command higher prices than comparable products that do not bear those claims, and manufacturers reserve the front principal display panel of their packaging for the claims they believe will most motivate a purchase.

14. Defendant has capitalized on that demand. It sells the Products containing allulose—a monosaccharide sugar—while representing on their front labels that they contain only 2 grams of sugar, when they contain 4 grams per labeled serving. Defendant thereby obtained an unfair competitive advantage over competitors that accurately label comparable products, at the expense of unwitting consumers.

**B. Defendant's Sugar Representations**

15. Defendant prominently makes the "2g SUGAR" representation on the front labels of all three Products. It repeats that representation outside the Nutrition Facts panels on the back labels of the Chocolate Chip Cookie Bars and Cinnamon Coffee Cake Bars. Each Product's labeled serving is one brownie or bar weighing 25 grams. The Products, Sugar Representations, and accompanying ingredient and nutrition information are depicted below:

[4] World Health Organization, Healthy Diet (Jan. 26, 2026), https://www.who.int/news-room/fact-sheets/detail/healthy-diet

[5] American Heart Association, Added Sugars, https://www.heart.org/en/healthy-living/healthy-eating/eat-smart/sugar/added-sugars.

**Fiber One 70 Calorie**
**Chocolate Fudge Brownies**

Front label




Back label




Front sugar representation




Nutrition Facts sugar declarations




Ingredient list excerpt




Net carbohydrate calculation



## Fiber One 70 Calorie Chocolate Chip Cookie Bars

| Front label | Back label |
|---|---|







Front sugar representation




Nutrition Facts sugar declarations




Ingredient list excerpt




Back sugar representation



## Fiber One 70 Calorie Cinnamon Coffee Cake Bars

Front label




Back label




Front sugar representation




Nutrition Facts sugar declarations




Back sugar representation




Ingredient list excerpt



16. Defendant disseminated the Sugar Representations through the Products' packaging and authorized reproductions of the Products' front-label images on retail product pages. Defendant authored, created, supplied, authorized, approved, adopted, and disseminated the materially uniform Sugar Representations and product images.

17. The Sugar Representations communicate to reasonable consumers that the Products contain 2 grams of sugar per labeled serving. That is the plain and ordinary meaning of "2g SUGAR."

18. However, these representations are false: each Product contains 2 grams of allulose—a sugar—in addition to the 2 grams of other sugars, for a total of 4 grams of sugar per labeled serving.

19. The Products' Nutrition Facts panels reinforce, rather than cure, the materially misleading impression created by the Sugar Representations. Each panel declares 2 grams of Total Sugars, including 1 gram of Added Sugars. Each ingredient statement identifies allulose. The Chocolate Fudge Brownies back label also identifies 2 grams of allulose in its net-carbohydrate calculation, which subtracts allulose from total carbohydrates rather than identifying it as part of the Product's sugar content.

20. The "2g SUGAR" badges do not disclose that they exclude allulose or that each Product contains an additional 2 grams of that sugar. Listing allulose as an ingredient does not explain that the represented sugar amount omits it. Nor does subtracting allulose to calculate net carbohydrates make allulose cease to be a sugar.

**C. <u>Allulose Is a Sugar</u>**

21. Allulose is a sugar.

22. Chemically, allulose is a monosaccharide. It is the C-3 epimer of D-fructose, meaning that allulose and fructose have the same molecular formula and connectivity but differ in the spatial orientation of a hydroxyl group at the third carbon. "D-allulose, a C-3 epimer of D-fructose, is a rare monosaccharide used as a food ingredient or a sweetener."[6] Allulose is accordingly "a rare sugar,"

[6] Han-Joo Maeng *et al.*, Metabolic Stability of D-Allulose in Biorelevant Media and Hepatocytes: Comparison with Fructose and Erythritol, 8 Foods art. 448, at 1 (2019), https://doi.org/10.3390/foods8100448.

and "a monosaccharide that is low in calories and that maintains approximately 70% of sweetness relative to sugar."[7]

23. Allulose is not merely a sugar as a matter of chemical classification. It is used as one. Allulose has "70% of the sweetness of sucrose, which means it is viewed as a potential alternative sweetener."[8] The food-science literature describes allulose and other rare sugars as "monosaccharides with sweetness similar to those as caloric sugars, but [with] low caloric values," which "are now widely used as sugar substitutes."[9]

24. Because allulose is less sweet than table sugar, it is used in gram-scale quantities as a bulk sweetener. High-intensity sweeteners such as saccharin, aspartame, acesulfame potassium, neotame, sucralose, and advantame are approximately 200 to 20,000 times as sweet as sucrose.[10] By contrast, allulose has approximately 70% of sucrose's sweetness and is used in gram-scale quantities as a bulk sweetener.[11]

25. Allulose also behaves like sugar in food. "It is convenient for the food industry to use D-allulose, as its chemical properties are similar to those of fructose in terms of solubility, water activity, and viscosity."[12] It is used as "a partial replacement of added sugars."[13] Allulose is "widely regarded as a promising substitute for sucrose"—that is, a substitute for table sugar, and one that is itself a sugar.[14]

---

[7] Youngji Han et al., Gastrointestinal Tolerance of D-Allulose in Healthy and Young Adults. A Non-Randomized Controlled Trial, 10 Nutrients art. 2010, at 1–2 (2018), https://doi.org/10.3390/nu10122010.

[8] Maeng *et al.*, supra note 6, at 2.

[9] *Maeng et al.*, *supra* note 6, at 9–10.

[10] U.S. Food & Drug Administration, Aspartame and Other Sweeteners in Food, https://www.fda.gov/food/food-additives-petitions/aspartame-and-other-sweeteners-food (last visited Aug. 18, 2026).

[11] Mengting Tao, Wenli Zhang & Wanmeng Mu, D-Allulose: A New Generation of Potential Bulk Sweeteners in the Food Industry, 73 J. Agric. & Food Chem. 27,833, 27,833–35 (2025) (Viewpoint), https://doi.org/10.1021/acs.jafc.5c13620.

[12] *Han et al.*, supra note 7, at 10.

[13] *Id.*

[14] Wenli Zhang *et al.*, D-Allulose, a Versatile Rare Sugar: Recent Biotechnological Advances and Challenges, 63 Critical Revs. Food Sci. & Nutrition 5661, 5661 (2023) (published online Dec. 29, 2021), https://doi.org/10.1080/10408398.2021.2023091.

26. The Food and Drug Administration ("FDA") identifies allulose as a sugar. In its 2016 Nutrition Facts rulemaking, the FDA stated that allulose, "as a monosaccharide, must be included" in the Total Sugars declaration pending any future rulemaking that would otherwise exclude the substance.[15] The current regulation continues to define Total Sugars as "the sum of all free mono- and disaccharides" and does not exclude allulose. 21 C.F.R. § 101.9(c)(6)(ii).

27. The Calorie Control Council likewise describes allulose under the heading "Allulose is a Naturally Occurring Sweetener" and states that "[a] monosaccharide, or simple sugar, allulose is absorbed by the body, but not metabolized, so it is nearly calorie-free."[16]

28. Each Product contains 2 grams of allulose per labeled serving. Defendant expressly identifies that amount on the Chocolate Fudge Brownies back label in the equation "5g NET CARBS = 17g TOTAL CARBS - 7g FIBER - 3g SUGAR ALCOHOL - 2g ALLULOSE." Each Product's ingredient statement also lists allulose. The Products' 2 grams of allulose are additional to the 2 grams of other sugars reflected in the Sugar Representations, yielding 4 grams of sugar per labeled serving.

**D. <u>Products Violate the FDA Nutrient Content Regulations</u>**

29. Congress empowered the FDA to oversee and regulate food labeling by enacting the Federal Food, Drug, and Cosmetic Act, as amended by the Nutrition Labeling and Education Act, 21 U.S.C. § 301 *et seq*. FDA promulgated the relevant food-labeling regulations in 21 C.F.R. part 101.

30. FDA regulations distinguish mandatory or permitted declarations within the Nutrition Facts panel from nutrient-content claims appearing elsewhere on a label or in labeling. Information appearing as part of the Nutrition Facts panel is not itself a nutrient-content claim. 21 C.F.R. § 101.13(c). By contrast, the Sugar Representations appear outside the Nutrition Facts panels on the Products' front labels and, for the Chocolate Chip Cookie Bars and Cinnamon Coffee Cake Bars, their back labels, and expressly characterize the amount of sugar in the Products.

---

[15] Food Labeling: Revision of the Nutrition and Supplement Facts Labels, 81 Fed. Reg. 33,742, 33,796 (May 27, 2016).

[16] Calorie Control Council, Allulose, https://caloriecontrol.org/ingredients/sweeteners/allulose/ (last visited September 14, 2026).

31. Nutrient-content claims are strictly forbidden unless specifically allowed under FDA regulations. 21 C.F.R. § 101.13(b) ("A claim that expressly or implicitly characterizes the level of a nutrient of the type required to be in nutrition labeling under § 101.9 or under § 101.36 (that is, a nutrient content claim) may not be made on the label or in labeling of foods unless the claim is made in accordance with this regulation and with the applicable regulations in subpart D . . . .").

32. The Sugar Representations are expressed nutrient-content claims. An expressed nutrient content claim is "any direct statement about the level (or range) of a nutrient in the food, e.g., 'low sodium' or 'contains 100 calories.'" 21 C.F.R. § 101.13(b)(1). A statement of a nutrient's quantity is the regulation's own example of such a claim.

33. Section 101.13(i) governs statements of the amount of a nutrient appearing outside the Nutrition Facts panel. It permits such a statement only if one of three conditions is met: the statement implicitly characterizes the level of the nutrient and is consistent with a definition for a claim provided in subpart D, *id.* § 101.13(i)(1); the statement implicitly characterizes the level and is not consistent with such a definition, in which case it must be accompanied by an adjacent disclaimer that the food is not "low" in the nutrient, *id.* § 101.13(i)(2); or the statement does not in any way implicitly characterize the level of the nutrient and "is not false or misleading in any respect," *id.* § 101.13(i)(3).

34. The Sugar Representations are quantitative statements of the amount of sugar in the Products. Paragraph (i)(3) permits a statement of the amount of a nutrient that does not implicitly characterize its level only if the statement "is not false or misleading in any respect." The Sugar Representations fail that requirement because the Products contain 4 grams of sugar per labeled serving, including 2 grams of allulose, rather than the represented 2 grams. To the extent the Sugar Representations also implicitly characterize the Products as low in sugar, no definition for a "low sugar" claim appears in subpart D, and paragraph (i)(2) requires an adjacent disclaimer that the food is not "low" in that nutrient. No such adjacent disclaimer states that the Products are not low in sugar.

35. In October 2020, FDA issued nonbinding guidance addressing the declaration of allulose and calories from allulose on Nutrition and Supplement Facts labels. The guidance states FDA's intent to exercise enforcement discretion concerning exclusion of allulose from the Total

Sugars and Added Sugars declarations in those panels. It recognizes that allulose is a monosaccharide and does not amend the definition of Total Sugars in 21 C.F.R. § 101.9(c)(6)(ii).[17]

36. That guidance concerns Nutrition and Supplement Facts declarations. It does not amend § 101.13(i), which separately governs the Sugar Representations outside those panels. Plaintiff challenges the outside-panel representations that the Products contain 2 grams of sugar; she does not seek to alter the Products' Nutrition Facts declarations. Whatever discretion FDA exercises concerning those panel declarations, Defendant's separate, unqualified "2g SUGAR" representations must satisfy the applicable requirement that outside-panel nutrient-amount statements not be false or misleading.

37. Sugar is a nutrient "of the type required to be in nutrition labeling under § 101.9." 21 C.F.R. § 101.13(b). Section 101.9(c)(6)(ii) defines Total Sugars as "the sum of all free mono- and disaccharides." That same definition governs the Sugar Representations, because compliance with the requirements for nutrient-content claims is determined using the analytical methodology prescribed for nutrition labeling in § 101.9. Id. § 101.13(o). Allulose, as a free monosaccharide and the C-3 epimer of D-fructose, falls within that definition and must be included in measuring the Products' sugar content for the challenged outside-panel claims. Measured that way, each Product contains 4 grams of sugar per labeled serving, including 2 grams of allulose. The Sugar Representations are false and, at minimum, materially misleading, and they violate 21 C.F.R. § 101.13(i).

38. Because the Products' labels and labeling bear false, misleading, and impermissible outside-panel nutrient-content claims, the Products are misbranded under federal law. 21 U.S.C. § 343(a)(1), (r)(1)(A); 21 C.F.R. §§ 101.9(c)(6)(ii), 101.13(b), (b)(1), (c), (i)(2)–(3), and (o). Misbranded food may not lawfully be introduced or delivered for introduction into interstate commerce. 21 U.S.C. § 331(a).

---

[17] U.S. Food & Drug Administration, Guidance for Industry: The Declaration of Allulose and Calories from Allulose on Nutrition and Supplement Facts Labels 1, 7–9 (Oct. 2020), https://www.fda.gov/media/123342/download.

39. Plaintiff does not seek to enforce the FDCA directly. She challenges only the outside-panel Sugar Representations; she does not challenge the Nutrition Facts declarations or seek to require a different Nutrition Facts methodology. She seeks relief under independently enforceable state consumer-protection and food-labeling laws, including California's Sherman Law, Cal. Health & Safety Code §§ 110100(a), 110660, and 110670, and her state-law claims seek to enforce requirements identical to 21 U.S.C. § 343(a)(1) and 21 C.F.R. § 101.13(i), not requirements different from or additional to federal law. Plaintiff independently alleges that the Sugar Representations mislead reasonable consumers.

**E. <u>Defendant's Conduct Violates California's Food Labeling Laws</u>**

40. Defendant's labeling, including the outside-panel Sugar Representations, and its distribution and sale of the Products violate the misbranding provisions of California's Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 109875 et seq. (the "Sherman Law"), which adopts federal food-labeling regulations as California regulations. Cal. Health & Safety Code § 110100(a).

41. Defendant's labeling, distribution, and sale of the Products violate the Sherman Law's misbranding provisions, including:

(a) Section 110660 (a food is misbranded if its labeling is false or misleading in any particular);

(b) Section 110670 (a food is misbranded if its labeling does not conform with the requirements for nutrient-content or health claims set forth in 21 U.S.C. § 343(r));

(c) Section 110760 (making it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded);

(d) Section 110765 (making it unlawful for any person to misbrand any food); and

(e) Section 110770 (making it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for delivery any such food).

42. Defendant's labeling, distribution, and sale of the Products also violate the Sherman Law's false-advertising provisions, including:

(a) Section 109885, which defines "advertisement" to include representations on products and their packages, and Section 110390, which prohibits dissemination of food advertisements that are false or misleading in any particular;

(b) Section 110395 (making it unlawful to manufacture, sell, deliver, hold, or offer to sell any falsely or misleadingly advertised food);

(c) Sections 110398 and 110400 (making it unlawful to advertise misbranded food or to deliver or proffer for delivery any food that has been falsely or misleadingly advertised).

43. Because the Products bear the Sugar Representations despite containing 4 grams of sugar per labeled serving, including 2 grams of allulose, the Products are misbranded and falsely advertised under California law, and Defendant's labeling, distribution, and sale of the Products are unlawful.

**F. <u>Reasonable Consumers Cannot Detect Defendant's Deception</u>**

44. Reasonable consumers have no reason to search elsewhere on a package or retail product page when presented with the conspicuous Sugar Representations that the Products contain 2 grams of sugar per labeled serving. Consumers are not expected to look beyond a misleading representation on the front of a package to discover that the representation is false. Reasonable consumers rely on the conspicuous Sugar Representations at the point of sale.

45. Allulose is not a common household name. Reasonable consumers, including Plaintiff, are unlikely to recognize the term or to infer from an ingredient list or net-carbohydrate equation alone that it is a sugar that must be included when assessing an outside-panel sugar-amount claim.

46. Even if consumers examine Defendant's ingredient statements and product information, those disclosures reinforce the misleading impression. Each Nutrition Facts panel declares 2 grams of Total Sugars, the same number emphasized in the outside-panel Sugar Representations. The ingredient statements identify allulose but do not explain that it is sugar omitted from the advertised amount. The Chocolate Fudge Brownies back label invites consumers to subtract 2 grams of allulose to determine net carbohydrates. That calculation does not tell consumers that the Product contains 4 grams of sugar. The repeated "2g SUGAR" badges on the Chocolate Chip Cookie

Bars and Cinnamon Coffee Cake Bars' back labels further reinforce the same message. Nothing in these disclosures corrects the unqualified representation that the Products contain 2 grams of sugar per labeled serving.

47. Consumers are also not required to conduct independent scientific testing or research into the chemical classification of listed ingredients, to reconcile separate label components, or to perform arithmetic to verify express label claims. Reasonable consumers do not possess specialized knowledge of carbohydrate chemistry or federal labeling law. Defendant is responsible for ensuring that its express labeling and marketing claims are truthful and not misleading.

### G. <u>Defendant Knew the Sugar Representations Were False</u>

48. Defendant knew, or should have known, that the Sugar Representations were false, misleading, deceptive, and unlawful when it marketed, advertised, labeled, distributed, and sold the Products. Specifically, Defendant knew that (a) each Product contains 2 grams of allulose in addition to 2 grams of other sugars; (b) allulose is a sugar; (c) the Sugar Representations state that the Products contain 2 grams of sugar per labeled serving; (d) the Nutrition Facts panels repeat 2 grams of Total Sugars; (e) the Chocolate Fudge Brownies net-carbohydrate calculation separately quantifies 2 grams of allulose; (f) reasonable consumers would rely on the Sugar Representations; (g) consumers would not receive the represented benefit of the bargain; (h) the Sugar Representations enabled Defendant to charge a premium; and (i) no adjacent disclaimer states that the Products are not low in sugar.

49. Defendant formulates the Products and controls their ingredient statements, Nutrition Facts panels, packaging, and marketing. Defendant lists allulose as an ingredient in each Product and states the allulose amount in the Chocolate Fudge Brownies net-carbohydrate calculation, while printing the Sugar Representations prominently on the Products' front labels. Defendant, as the formulator, marketer, and seller of the Products, controlled, authored, supplied, authorized, approved, adopted, or materially participated in making the Sugar Representations. Those facts demonstrate that Defendant knew how much allulose the Products contained while making the challenged representations.

50. Defendant could have stopped using the Sugar Representations, accurately qualified them, or ensured that they were true, but chose not to. Despite its knowledge that consumers reasonably rely on the Sugar Representations, Defendant chose to continue using them, thereby causing consumers to buy or overpay for the Products.

**H. <u>Defendant's Sugar Representations Injured Plaintiff and the Classes</u>**

51. Defendant concealed or failed to disclose material facts necessary to prevent the Sugar Representations from misleading consumers, including (a) that each Product contains 2 grams of allulose in addition to 2 grams of other sugars; (b) that the Products' "2g SUGAR" representations exclude their allulose content; (c) each Product's sugar content under 21 C.F.R. § 101.9(c)(6)(ii); (d) the facts that render the Sugar Representations false, misleading, or noncompliant under 21 C.F.R. § 101.13(i); and (e) that the Products are misbranded under federal and, with respect to Plaintiff and the California Subclass, California law when sold bearing the Sugar Representations.

52. As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive Sugar Representations and omissions, Defendant injured Plaintiff and the Class Members in that they: (a) paid money for products that were not as represented; (b) paid a premium for the Products; (c) were deprived of the benefit of their bargains; and (d) purchased misbranded Products that could not lawfully have been sold because they violate FDA requirements and, for Plaintiff and California Subclass Members, California's Sherman Law.

53. Accordingly, Plaintiff and the Class Members suffered injury in fact and lost money or property because of Defendant's wrongful conduct.

**I. <u>Plaintiff Lacks an Adequate Remedy at Law</u>**

54. Plaintiff lacks an adequate remedy at law for the future harm described above. Damages cannot remedy her inability to rely on Defendant's Sugar Representations when deciding whether to purchase the Chocolate Fudge Product in the future. Only injunctive relief requiring Defendant to cease or correct the misleading Sugar Representations can address that prospective harm.

55. Equitable relief is also necessary because legal remedies may prove inadequate to provide complete relief, including restitution measured by the difference between the prices Plaintiff and Class Members paid and the value of the Products as received, which may not be coextensive with damages.

56. Equitable relief is additionally appropriate because the statutes of limitations for the asserted causes of action vary. The UCL carries a four-year limitations period, which may reach purchases not fully remediable under other causes of action.

57. The scope of actionable misconduct under the FAL and UCL is also broader than under other potential causes of action. The FAL and UCL prohibit Defendant's fraudulent labeling and advertising scheme. The UCL may also borrow statutory prohibitions that do not themselves create a private cause of action.

## CLASS ACTION ALLEGATIONS

58. Plaintiff brings this action on behalf of herself and all others similarly situated under Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3). The proposed classes are defined below (collectively, the "Classes"):

> **Nationwide Class:** All persons in the United States who, during the maximum period of time permitted by law, purchased one or more of the Products for their personal use while those Products contained allulose and bore or were marketed with a Sugar Representation.
>
> **Multi-State Consumer Protection Subclass:** All persons who, during the maximum period permitted by law, purchased one or more of the Products for their personal use while those Products contained allulose and bore or were marketed with a Sugar Representation in a state with a consumer-protection statute materially similar to the statutes identified herein.
>
> **California Subclass:** All persons in California who, during the maximum period of time permitted by law, purchased one or more of the Products for their personal use while those Products contained allulose and bore or were marketed with a Sugar Representation.

59. The Classes do not include: (1) Defendant or its officers or directors; (2) the Judge or Magistrate Judge assigned to this action; (3) the assigned Judge's or Magistrate Judge's staff and family; or (4) Plaintiff's counsel or Defendant's counsel.

60. Plaintiff reserves the right to amend the class definitions and add classes or subclasses as appropriate based on investigation, discovery, and the specific theories of liability.

61. **Community of Interest:** There is a well-defined community of interest among members of the Classes, and the disposition of their claims in a single action will provide substantial benefits to all parties and to the Court.

62. **Numerosity:** While the exact number of Class Members is unknown to Plaintiff and can be determined only through discovery, upon information and belief, they number at least in the thousands, and joinder is impracticable. Class Members may be notified through Defendant's and third-party retailers' distribution and sales records and by publication.

63. **Existence and Predominance of Common Questions of Law and Fact:** Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual members. These common legal and factual questions include, but are not limited to:

(a) Whether allulose is a free monosaccharide and sugar;

(b) Whether each Product contains 4 grams of sugar per labeled serving, including 2 grams of allulose, and fails the governing conditions for the Sugar Representations, including 21 C.F.R. § 101.13(i);

(c) Whether reasonable consumers would understand Defendant's representations concerning the Products to be untrue or misleading;

(d) Whether Defendant's representations were material;

(e) Whether the Products are misbranded under federal law and, with respect to the California Subclass, California law;

(f) Whether Defendant was unjustly enriched as a result of the unlawful conduct alleged in this Complaint;

(g) Whether Plaintiff and Class Members suffered economic injury as a result of Defendant's actions and the amount of restitution to which they are entitled;

(h) Whether Plaintiff and Class Members are entitled to attorneys' fees and costs.

64. **Typicality:** Plaintiff's claims are typical of those of other Class Members because Plaintiff was exposed to a Sugar Representation, purchased a Product in reliance on it, and suffered the same type of economic loss.

65. **Adequacy:** Plaintiff will fairly and adequately represent and protect the Classes' interests as required by Federal Rule of Civil Procedure 23(a)(4). Plaintiff has no interests adverse to the Classes, is committed to vigorous prosecution, and has retained skilled and experienced counsel.

66. **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of the asserted claims under Federal Rule of Civil Procedure 23(b)(3) because the expense and burden of individual litigation make it economically infeasible for Class Members to seek redress outside a class action. Even if Class Members could afford individual litigation, the burden on the courts would be substantial. Individualized litigation would risk varying or contradictory judgments and magnify delay and expense through repeated trials of the same factual issues. By contrast, maintaining this action as a class action with respect to some or all issues presents fewer management difficulties, conserves party and judicial resources, and protects each Class Member's rights. Plaintiff anticipates no difficulty managing this action as a class action. Classwide relief is essential to compel compliance with applicable consumer-protection laws, and separate actions could subject Defendant to inconsistent obligations.

## CAUSES OF ACTION

### COUNT I
**Violation of California's Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code § 17200 et seq.**
**(On Behalf of Plaintiff and the California Subclass)**

67. Plaintiff incorporates by reference and re-alleges the allegations contained in all preceding paragraphs of this Complaint.

68. Plaintiff brings this claim individually and on behalf of the California Subclass against Defendant.

69. Defendant violated California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200–17210, by engaging in unlawful, unfair, and fraudulent business practices.

70. The UCL defines unfair competition to "mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code." Cal. Bus. & Prof. Code § 17200. A business act or practice is unlawful if it violates any established state or federal law. A practice is unfair if it (1) offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers. The UCL allows a person who has suffered injury in fact and lost money or property to prosecute a civil action for violation of the UCL. Cal. Bus. & Prof. Code § 17204.

71. Defendant's acts, as described above, constitute unlawful, unfair, and fraudulent business practices pursuant to California Business & Professions Code § 17200 *et seq.*

72. Defendant violated the UCL's proscription against unlawful business practices through its violations of the FAL, Cal. Bus. & Prof. Code § 17500 et seq.; and the Sherman Law, including Cal. Health & Safety Code §§ 110100, 110390, 110395, 110398, 110400, 110660, 110670, 110760, 110765, and 110770. Through the Sherman Law's adoption of federal food-labeling requirements, Defendant also violated the parallel standards in 21 U.S.C. § 343(a)(1), (r)(1)(A) and 21 C.F.R. §§ 101.9(c)(6)(ii), 101.13(b), (b)(1), (c), (i)(2)–(3), and (o).

73. Defendant also violated the UCL's proscription against unfair business practices. Defendant's acts, omissions, misrepresentations, practices, and nondisclosures are substantially injurious to consumers, offend public policy, and are immoral, unethical, oppressive, and unscrupulous. The gravity of Defendant's conduct outweighs any asserted benefit. There is no utility in representing that Products containing 4 grams of sugar per labeled serving, including 2 grams of allulose, contain 2 grams of sugar. Defendant's false and misleading representations also disadvantage competitors that either do not make similar claims or formulate their products to conform to them.

74. Plaintiff and California Subclass Members suffered substantial injury by buying Products they would not have purchased absent Defendant's unlawful, fraudulent, and unfair labeling, packaging, advertising, and omissions concerning allulose.

75. The gravity of Defendant's conduct outweighs any justification, particularly considering lawful alternatives. Defendant could have removed the Sugar Representations, accurately qualified them, or reformulated the Products. Its conduct offends established public policy and substantially injures Plaintiff and California Subclass Members.

76. Plaintiff and California Subclass Members could not reasonably have avoided their injury or known that the prominent labeling and advertising were inaccurate. Consumers lack specialized knowledge to identify allulose as a free monosaccharide and are not required to reconcile the Sugar Representations with the Nutrition Facts and ingredient information.

77. Under California Business & Professions Code § 17203, Plaintiff and California Subclass Members seek restitution, injunctive relief, attorneys' fees, and all other relief the Court deems proper.

**COUNT II**
**Violation of California's False Advertising Law**
**Cal. Bus. & Prof. Code § 17500**
**(On Behalf of Plaintiff and the California Subclass)**

78. Plaintiff incorporates by reference and re-alleges the allegations contained in all preceding paragraphs of this Complaint.

79. Plaintiff brings this claim on behalf of herself and the California Subclass against Defendant.

80. Defendant's acts and practices have deceived or are likely to deceive California Subclass Members and the public. Defendant makes the Sugar Representations on the Products' front labels, even though each Product contains 4 grams of sugar per labeled serving, including 2 grams of allulose, rather than the represented 2 grams.

81. Defendant has disseminated materially uniform labeling and advertising regarding the Products throughout California and the United States. The labeling and advertising were unfair,

deceptive, untrue, or misleading within the meaning of Cal. Bus. & Prof. Code § 17500 and were intended and likely to deceive consumers.

82. In making and disseminating these statements, Defendant knew, or should have known, its labeling and advertising were untrue or misleading. Plaintiff and California Subclass Members based their purchasing decisions on the materially false Sugar Representations and were injured in fact and lost money or property as a result.

83. Defendant's misrepresentations concerning the material facts described above constitute false and misleading advertising and therefore violate Cal. Bus. & Prof. Code § 17500 et seq.

84. Plaintiff and California Subclass Members seek restitution, injunctive relief, attorneys' fees, and all other relief the Court deems proper.

**COUNT III**

**Violation of Consumer Protection Statutes**
**(On Behalf of Plaintiff and the Multi-State Consumer Protection Subclass)**

85. Plaintiff incorporates by reference and re-alleges the allegations contained in all preceding paragraphs of this Complaint.

86. Plaintiff brings this claim individually and on behalf of the Multi-State Consumer Protection Subclass against Defendant.[18]

---

[18] While discovery may alter the following, Plaintiff asserts that the states with similar consumer fraud laws under the facts of this case include, but are not limited to: Alaska Stat. § 45.50.471 et seq.; Ariz. Rev. Stat. §§ 44-1521 et seq.; Ark. Code § 4-88-101 et seq.; Colo. Rev. Stat. Ann. § 6-1-101 et seq.; Conn. Gen. Stat. § 42-110a et seq.; 6 Del. Code § 2513 et seq.; D.C. Code § 28-3901 et seq.; Fla. Stat. Ann. § 501.201 et seq.; Ga. Code Ann. § 10-1-390 et seq.; Haw. Rev. Stat. § 480-2 et seq.; Idaho Code Ann. § 48-601 et seq.; 815 ILCS 505/1 et seq.; Ind. Code § 24-5-0.5-2 et seq.; Kan. Stat. Ann. § 50-623 et seq.; Ky. Rev. Stat. Ann. § 367.110 et seq.; La. Rev. Stat. § 51:1401 et seq.; Me. Rev. Stat. tit. 5, § 207 et seq.; Md. Code Ann., Com. Law § 13-301 et seq.; Mass. Gen. Laws ch. 93A et seq.; Mich. Comp. Laws § 445.901 et seq.; Minn. Stat. § 325F et seq.; Mo. Rev. Stat. § 407 et seq.; Neb. Rev. Stat. §§ 59-1601 et seq.; Nev. Rev. Stat. § 41.600 et seq.; N.H. Rev. Stat. § 358-A:1 et seq.; N.J. Stat. Ann. § 56:8 et seq.; N.M. Stat. Ann. § 57-12-1 et seq.; N.Y. Gen. Bus. Law § 349 et seq.; N.C. Gen. Stat. § 75-1.1 et seq.; N.D. Cent. Code § 51-15 et seq.; Ohio Rev. Code § 1345.01 et seq.; Okla. Stat. tit. 15, § 751 et seq.; Or. Rev. Stat. § 646.605 et seq.; 73 Pa. Stat. § 201-1 et seq.; R.I. Gen. Laws § 6-13.1-5.2(b); S.C. Code Ann. §§ 39-5-10 et seq.; S.D. Codified Laws § 37-24-1 et seq.; Tenn. Code Ann. § 47-18-101 et seq.; Tex. Bus. & Com. Code § 17.41 et seq.; Utah Code Ann. § 13-11-1 et seq.; 9 V.S.A. § 2451 et seq.; Va. Code §§ 59.1-196 et seq.; Wash. Rev. Code § 19.86.010 et seq.; W. Va. Code § 46A et seq.; Wis. Stat. § 100.18 et seq.; and Wyo. Stat. Ann. § 40-12-101 et seq.

87. Defendant makes the Sugar Representations on the Products' front labels, even though each Product contains 4 grams of sugar per labeled serving, including 2 grams of allulose, rather than the represented 2 grams.

88. The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the nature and value of the Products.

89. As a result of Defendant's deceptive practices, Plaintiff and Multi-State Consumer Protection Subclass Members suffered economic injury because they would not have purchased the Products or would have paid less had they known the Products did not conform to the Sugar Representations.

90. Plaintiff and Multi-State Consumer Protection Subclass Members seek actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs as allowed by applicable law.

**COUNT IV**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Nationwide Class)**

91. Plaintiff incorporates by reference and re-alleges the allegations contained in all preceding paragraphs of this Complaint.

92. Plaintiff brings this claim individually and on behalf of the Nationwide Class against Defendant under California law or, in the alternative, under the substantially similar laws of the states applicable to Nationwide Class Members.

93. To the extent required, Plaintiff asserts this cause of action in the alternative to her other claims, as permitted by Federal Rule of Civil Procedure 8.

94. Defendant's false and misleading Sugar Representations caused Plaintiff and Class Members to pay a price premium for the Products.

95. Defendant thereby received a direct and unjust benefit at the expense of Plaintiff and Class Members.

96. Plaintiff and Class Members seek the return of that unjust benefit.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant as follows:

a) For an order certifying the Classes under Fed. R. Civ. P. 23, naming Plaintiff as representative of the Classes, and appointing Plaintiff's Counsel as Class Counsel;

b) For an order declaring that Defendant's conduct violates each of the statutes referenced herein;

c) For actual and statutory damages available under the asserted causes of action;

d) For prejudgment interest on all amounts awarded;

e) For restitution to the extent permitted by applicable law;

f) For injunctive relief as pleaded or as the Court may deem proper;

g) For an order awarding Plaintiff's and the Classes' reasonable attorneys' fees, expenses, and costs of suit; and

h) For such other and further relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

Dated: November 5, 2026

Respectfully submitted,

**GUCOVSCHI LAW FIRM, PLLC.**

By: /s/ Adrian Gucovschi

Adrian Gucovschi (State Bar No. 360988)
Nathaniel Haim Sari (State Bar No. 362634)
165 Broadway, 23rd Floor
New York, NY 10006
Telephone: (212) 884-4230
Facsimile: (212) 884-4230
E-Mail: adrian@gucovschilaw.com
nathaniel@gucovschilaw.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joshua B. Glatt (State Bar No. 354064)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com
jglatt@bursor.com

Attorneys for Plaintiff